FILED

AUG 0 2 2006  NF

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

WANDA VAZQUEZ,     )
    )
    Plaintiff     )
    )
    v.     )
    )
    )
BOARD OF TRUSTEES OF     )
COMMUNITY COLLEGE DISTRICT     )
#508, d/b/a CITY COLLEGES OF     )
CHICAGO, d/b/a WYCC Public Television )
Station     )
    )
    Defendant.     )
    )
    )
    )
    )

06CV4162
JUDGE HART
MAGISTRATE JUDGE SCHENKIER

## COMPLAINT

Plaintiff, WANDA VAZQUEZ, ("Vazquez") by her attorney, Carol Coplan Babbitt, of The Law Office of Carol Coplan Babbitt, and complains against the defendant, BOARD OF TRUSTEES OF COMMUNITY COLLEGE DISTRICT #508, d/b/a CITY COLLEGES OF CHICAGO, d/b/a WYCC Public Television Station ("WYCC") as follows:

### JURISDICTION and VENUE

1.    This action arises under, and jurisdiction is founded on, Title 28 U.S.C. Sec. 1343(3) and (4); and the Civil Rights Act of 1964, Title VII, 42 U.S.C. Sec. 2000-2 et seq.; as amended; the Civil Rights Act of 1871, the Civil Rights Act of 1991, and The Family and Medical Leave Act of 1993, 29 U.S.C.A. Sec. 2601 et seq ("FMLA").

2.    Venue is proper in the Northern District of Illinois, Eastern Division, pursuant to 28 U.S.C. Section 1391(b).

1

## PARTIES

3.  Vazquez is a female, a citizen of the United Sates of America, a non-Caucasian, African American person of Puerto Rican decent, and she had been employed by the Defendant from on or about May 1998 through on or about September 1, 2004, when she was terminated by defendant. At all times relevant to this action, she was working with defendant in Chicago, Cook County. Illinois.

4.  Vazquez, as a citizen of both the United States of America is entitled to all the rights, privileges and immunities guaranteed to all citizens of the United States under the Constitution and Laws of the United States.

5.  WYCC is doing business in Illinois.

6.  WYCC employs more than 30 people and it is an "employer" within the meaning of Title VII.

7.  On or about October 8, 2003, Vazquez filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and with the Department of Human Rights ("IDHR") for the State of Illinois, alleging she had been discriminated against on the basis of her gender. The IDHR found good cause on her charge of gender discrimination and the case proceeded to the Illinois Human Rights Commission. (A copy of the investigative report and Notice of Substantial Evidence is attached as Exhibit A.)

8.  On or about February 3, 2005 Vazquez filed a second charge alleging retaliation for filing a charc of discrimination with the EEOC and IDHR.

2

9.    Vazquez received right to sue letters on both charges on or about June 26, 2006.
      A copy of the right to Sue letters are attached hereto and made a part hereof as
      Exhibit B.

10.   Vazquez has exhausted her State and Federal administrative remedies and under
      42 U.S.C. Sec. 2000e-5(f)(1) has standing to file this action.

## FACTS

11.   Vazquez was hired by WYCC on or about May of 1998, as a part-time master
      control operator.

12.   During Vazquez's employment at WYCC she received regular pay increases and
      satisfactory reviews. She enjoyed a very regular although part-time schedule of
      approximately 30-19 hours per pay period.

13.   In or about May of 2003, Larry Eskridge ("Eskridge") began to supervise and
      organize the work scheduling at WYCC and as soon as Eskridge became
      Vazquez's supervisor she was discriminated because of her race and/or her gender
      in the following ways:

      a.  In or about May through October of 2003, She received a drastic and sudden
          reduction in work hours and no longer enjoyed a regular schedule of work
          days, whereas the other, non-female, workers' hours were not reduced;

      b.  Starting in or about May through October of 2003, she was disparately treated
          because of either her gender and/or her race, regarding discipline, tardiness,
          absence and performance evaluations;

      c.  Although Vazquez asked to be trained on certain new equipment and
          technology so that she could be promoted to full-time or to a different position
          that she could earn more money in, Eskridge refused to afford her the training
          opportunities but allowed the other, non-female, Caucasian workers these
          training classes;

    d.  Plaintiff's supervisor made certain gender based comments to the union representative indicating a bias towards scheduling women at certain times; and

    e.  She was otherwise disparately and unfairly treated because of her gender and/or her race as yet to be discovered.

14.    Because of the ongoing and increasing disparate treatment, Vazquez filed a Charge of discrimination on or about October 3, 2003. While that charge was pending and as a direct result of the charge being filed, Eskridge and defendant generally retaliated against Vazquez by more strictly scrutinizing her work product, further reducing her hours and refusing to schedule her at all during whole blocks of time and unequally disciplining her for her work performance, tardiness and absences.

15.    In or about May 17, 2004 through July 2, 2004, Vazquez was forced to take a leave of absence from work due to an illness and when she returned although she made her best efforts to communicate with defendant to obtain work hours, she was denied any regular work hours, often she was denied any irregular work hours and she was further and more stringently discriminated against facing by more stringent and continual disciplinary standards than the other, non-female, Caucasian workers.

16.    On or about September 1, 2004, defendant's discriminatory and retaliatiatory treatment culminated in Vazquez's termination.

4

## COUNT I
## GENDER DISCRIMINATION – TITLE VII

17.　　Vazquez reasserts and realleges paragraphs 1-16 of this Complaint as paragraph

17 of this Count as if set forth fully.

18.　　42 U.S.C. Sec. 2000e-2 reads in pertinent part as follows:

> (a) EMPLOYERS. It shall be an unlawful employment practice for an
> employer—

> (1) To fail or refuse to hire or to discharge any individual, or otherwise to
> discriminate against any individual with respect to his compensation, terms,
> conditions, or privileges of employment, because of such individual's race,
> color, religion, sex or national origin; or

> (2) To limit, segregate, or classify his employees or applicants for employment in
> any way which will deprive or tend to deprive any individual of employment
> opportunities or otherwise adversely affect his status as an employee, because
> of such individual's race, color, religion, sex or national origin.

42 U.S.C. Sec. 2000-3(a) specifically forbids discrimination against an employee:

> …because he has opposed any practice made unlawful employment practice by
> this subchapter, or because he has made a charge testified, assisted or participated in any
> manner in an investigation, proceeding or hearing under this subchapter.

19.　　As the above acts show, WYCC has demonstrated a pattern and practice of

continual gender discrimination in the terms and conditions of Vazquez's employment, in

violation of Title VII.

20.　　Defendant's actions constitute malicious and reckless indifference to Vazquez's

federally protected rights.

21.　　As a proximate result of the gender based discriminatory treatment alleged above,

Vazquez has suffered loss of income, loss of other monetary benefits, loss of future business

opportunities and other forms of damage.

## COUNT II
## RACE DISCRIMINATION

22.     Vazquez reasserts and realleges paragraphs 1-16 of the Complaint as paragraph 22 as if set forth fully.

23.     42 U.S.C. Sec. 2000e-2 makes it unlawful for any employer to disparately treat an employee with respect to its employment status, promotions, discipline and generally any terms and conditions of employment because of an employee's race.

24.     As is outlined above, defendant's action towards Vazquez in her employment with defendant were discriminatory and violated Title VII. With regard to Vazquez, defendant's actions were continual and constituted a pattern and practice of discrimination against her.

25.     Defendant's actions constitute malicious and reckless indifference to Vazquez's federally protected rights.

26.     As a proximate result of the gender based discriminatory treatment alleged above, Vazquez has suffered loss of income, loss of other monetary benefits, loss of future business opportunities and other forms of damage.

## COUNT III – RETALIATION

27. Turner reasserts and realleges paragraphs 1-26 of the Complaint as paragraph 27 of this count as if set forth fully.

28. Defendants unlawfully retaliated against Vazquez after she filed her first charge of discrimination in violation of Title VII and demonstrated reckless indifference to her federally protected rights by increasing and exacerbating its differential treatment of Vazquez, failing and refusing to schedule her for part-time work, and finally, terminating her employment on or about September 1, 2004.

6

29. As a direct result of Defendant's unlawful retaliation, Plaintiff has suffered a loss of professional standing, emotional pain and suffering, lost wages and employee benefits and he will continue to lose wages and benefits in the future.

## COUNT IV
## RETALIATORY DISCHARGE UNDER FMLA

30. Plaintiff reasserts and realleges paragraphs 1-16 the Complaint as if set forth fully herein.

31. The FMLA in section 2615(a) provides as follows:

(1) Exercise of rights

It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter.

(2) Discrimination

It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter.

32. Plaintiff is amongst the class of persons afforded protection under the FMLA.

33. Defendant unlawfully terminated plaintiff because of one or more of the following reasons:

      a.    Plaintiff took leave or covered time-off to care for her health; and/or

      a.    Plaintiff complied with the requirements of FMLA by notifying defendant as soon as practicable; and

      b.    Defendant terminated plaintiff in direct retaliation for exercising or attempting to exercise her rights under the FMLA.

34. Defendant acted willfully in violating plaintiff's FMLA rights.

35. As a proximate result of the defendant's retaliatory treatment when plaintiff availed himself of the protections afforded by the FMLA, as alleged above, Vazquez has suffered loss of income, loss of other monetary benefits, loss of future business opportunities and other forms of damage.

7

WHEREFORE, the plaintiff, WANDA VAZQUEZ, prays that this Court enter an order providing as follows:

(a)    Trial by Jury on the charges raised in her Complaint, and those filed with the IDHR and the EEOC and advancement on the court's docket for speedy hearing;

(b)    That a declaratory judgment be issued that Vazquez' rights have been violated as alleged above and that the practices complained of herein are unlawful and violative of the acts cited;

(c)    Permanently enjoining the defendants, their agents, successors, officers, employees and attorneys and those acting in concert with them from engaging in each of the unlawful practices, policies, customs, and usages set forth herein and from continuing any and all other practices shown to be in violation of applicable law;

(d)    That Vazquez have and recover from the defendants back wages and benefits, with pre- and post-judgment interest, actual, compensatory, consequential and punitive damages and any other damages to which Vazquez might be entitled; liquidated damages for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of future business opportunities and other non-pecuniary losses in an amount in an amount to sufficiently compensate her for Defendants' violations;

(e)    Award Vazquez the costs and disbursements of this action, including reasonable attorneys' fees pursuant to the Civil Rights Attorneys Fee Award Act of 1976, 42 U.S.C. Section 1988 and any other applicable fee statute; and

(g)    Such other legal or equitable relief as this court may deem just and proper.

VAZQUEZ DEMANDS A TRIAL BY JURY

BY _____
One of Plaintiff's attorneys

Carol Coplan Babbitt
*The Law Office of Carol Coplan Babbitt*
542 South Dearborn Street Suite 1010
Chicago, Illinois 60605
(312) 435-9775

8

ILLINOIS DEPARTMENT OF
# Human Rights

COMMEMORATING 25 YEARS OF SERVICE

ROD BLAGOJEVICH, GOVERNOR
ROCCO CLAPS, DIRECTOR

September 8, 2005

Wanda Vazquez
233 Park Lane
Sauk Village, IL 60411

Paul Burmeister, Associate General Counsel
Board of Trustees of Community College District #508 d/b/a
    City Colleges of Chicago
Office of the General Counsel
226 West Jackson Blvd., Ste. 1445
Chicago, IL 60606

RE:  Wanda Vazquez vs. Board of Trustees of Community College District #508 d/b/a
     City Colleges of Chicago, 2004CF0949

## NOTICE OF SUBSTANTIAL EVIDENCE

The Director of the Department of Human Rights ("Department") has reviewed the investigation report in the above-referenced matter and determined there is substantial evidence that a civil rights violation has been committed.

The Illinois Human Rights Act ("Act") mandates that the Department conduct conciliation to give the parties an opportunity to settle the case before a complaint is filed with the Human Rights Commission ("Commission").

I have been designated by the Director to CONCILIATE this case. Conciliation is a process in which a Department Staff Attorney facilitates settlement discussions with both parties via telephone.

The Department also offers MEDIATION, which is a form of conciliation. Mediation is a private, informal dispute resolution process in which a neutral third person, the mediator, meets with the parties to help reach an agreement. I have included information about mediation with this notice. If both parties are interested, I will transfer the case to the mediation unit to schedule a mediation conference.

All settlement efforts are confidential. If it is determined there is not a reasonable possibility of settlement, I will prepare a complaint against Respondent, file it with the Commission and serve notice of such filing on all parties, pursuant to Section 7A-102(F) of the Act. It is then the parties' responsibility to go forward with the case at the Commission. However, if Complainant rejects an offer which the Department determines will eliminate the effects of the violations charged and prevent their repetition, the Department will dismiss the charge, pursuant to Section 7A-103(D) of the Act.

**IT IS THE RESPONSIBILITY OF THE PARTIES TO INITIATE DISCUSSIONS IMMEDIATELY AFTER RECEIPT OF THIS NOTICE. THEREFORE, PLEASE REVIEW THE ENCLOSED INFORMATION AND CONTACT ME NO LATER THAN 5 DAYS AFTER RECEIPT OF THIS NOTICE WITH YOUR DECISION EITHER TO MEDIATE OR CONCILIATE.**

Brent A. Harzman
Staff Attorney
(312) 814-1906

### STATE OF ILLINOIS
### DEPARTMENT OF HUMAN RIGHTS
### INVESTIGATION REPORT

DHR NO.: 2004CF0949

EEOC NO.: 21BA40081

COMPLAINANT

Wanda Vazquez

RESPONDENT

Board of Trustees of Community
College District #508, d/b/a City
Colleges of Chicago

| I. | | Issue/Basis/Respondent | II. | | Finding |
|----|----|----|----|----|----|
| | A. | Reduction in hours, May, 2003 sex, female | | A. | Substantial evidence |
| | B. | Reduction in hours, July, 2003 sex, female | | B. | Substantial evidence |
| | C. | Reduction in hours, September, 2003 sex, female | | C. | Substantial evidence |
| | D. | Reduction in hours, October, 2003 sex, female | | D. | Substantial evidence |

III.   V. Brown   /   *PMB 9/6/05*

IV.   Jurisdiction

Alleged violations:

- A.   May, 2003
- B.   July, 2003
- C.   September, 2003
- D.   October, 2003

Charge filed:          October 8, 2003

Perfected date:        October 8, 2003

Amendments:            N/A

Number of employees:   32

V.   Uncontested facts

    A.   Respondent is engaged in the business of education and operates a system of seven community colleges in Chicago.

Charge No. 2004CF0949
Page 2 of 16

    B.    In May 1998, Complainant was hired by Respondent as a part-time master control operator.

    C.    On July 16, 2003, Reverend Willard High (male), sent a letter to Respondent requesting that Complainant's hours be reduced on Saturdays and Wednesdays, based on her spiritual needs.

    D.    On or about August 8, 2003, Reverend Willard High (male), sent a second letter to Respondent requesting that Complainant's hours be reduced on Saturdays and Wednesdays, based on her spiritual needs.

VI.    Employment Data

Paul Burmeister (male), General Counsel, stated that there are a total of 32 employees of which 20 (63%) are male and 12 (37%) are female. The total number of part-time master control operators at WYCC is four, which includes 2 (50%) males and 2 (50%) females.

VII.    Allegation A: Reduction of hours/sex, female

    A.    Prima facie allegations

        1.    Complainant's sex is female.

        2.    Complainant performed her duties as a part-time master control operator in a satisfactory manner.

        3.    In May 2003, Complainant's hours were reduced from 20 hours per week to 10 hours per week by Larry Eskridge (male), Chief Engineer. The reason given for the adverse action was due to budgetary constraints.

        4.    A similarly situated male master control operator, Ed Mead, did not have his hours reduced as Complainant hours were reduced.

    B.    Defenses

        1.    Respondent's position is that Complainant hours were not reduced in May 2003.

        2.    Larry Eskridge (male), Chief Engineer, stated that Complainant's hours were not reduced in May, 2003. Eskridge stated that Complainant was a part-time master control operator, and as part of her job, she was expected to fill in for employees during weekends and vacations. Eskridge stated that Complainant was not a weekly, full-time employee, and was never hired as a full-

Charge No. 2004CF0949
Page 3 of 16

time employee by Respondent. Eskridge stated that her opportunity for work was limited by the scheduling possibilities at Respondent. These limitations include self-imposed ones so Complainant could worship on Saturdays. Eskridge stated that Complainant's request was honored, and she was not scheduled on Saturdays. Eskridge stated that Complainant alleged that her hours were reduced in three non-consecutive months in 2003, and that she was not discriminated against in June and August 2003.

3. Larry Eskridge stated Respondent never told Complainant or any other employee that the reason for the decrease in hours was a decreased budget. Eskridge stated that in May and June 2003, there was no decrease in hours for employees. Eskridge explained that in September 2003, Complainant informed him of her need for decreased hours by a letter from her pastor that was sent on July 16, and August 8, 2003. Eskridge stated that in October 2003, Complainant ignored his voicemail requests to come into the office to discuss the schedule and work performance.

4. A letter from Rev. Willard High from the Worldwide Church of God (Exhibit A) states that Complainant was a member in good standing and that she may be involved in church activities that could impact her work schedule.

5. Eskridge stated that Complainant's hours were not reduced in May 2003. In fact, she worked 119 hours in May 2003, as opposed to 79 hours in April 2003. Complainant's hours were increased by 40 hours. Eskridge stated that Complainant worked 20 hours per week the first two weeks of May 2003, and her hours were then reduced for the third week of May 2003. The fourth week of May 2003, Complainant worked 35 hours.

6. Eskridge stated that since Complainant was a part-time employee, she was required to fill in when employees were sick, on the weekend, on vacation, and on an as needed basis. Eskridge stated that part-time employees are not guaranteed any amount of work. Eskridge stated that a part-time employee is scheduled as needed.

7. WYCC-TV20 part-time master control operator hours worked in May, July, and September 2003, as reported on City Colleges of Chicago signed certificates of attendance for Ed Mead, Complainant, Andrea Randall, and Albert Tate (Exhibit B) shows during the first week of May 2003, Complainant worked a total of 20 hours; the second week total was 20 hours; the third week total was 10 hours; the fourth week total was 35 hours, and the fifth week total was 34 hours, for a total monthly hours worked of 119

Charge No. 2004CF0949
Page 4 of 16

hours. This exhibit also shows that Ed Mead (male), Master Control Operator, worked 20 hours during all five weeks of May, 2003, with a total number of hours worked were 100 hours. Andrea Randall (female), Master Control Operator, worked 20 hours the first week; 27 hours the second week; 15 hours the third week; 23 hours the fourth week; and 25 hours the fifth week; for a total of 110 hours. Albert Tate (male), Master Control Operator, worked 20 hours the first and second week; 19 hours the third week; 23 hours the fourth week; and 38 hours the fifth week; for a total of 120 hours for May, 2003.

8. Eskridge stated that schedules are made and posted at least two weeks in advance. They are posted in the facility, sent by email to the employee and a copy placed in the employee's mailbox. Eskridge stated that the union contract requires a seven-day notice to change the schedule without consulting the employees. Eskridge stated that it is Respondent's practice to not change the posted schedule, except at the employee's request. When an employee calls in sick to their supervisor (required under work rules), the master control operator is asked to stay and cover the next shift. Eskridge stated that if that cannot happen, then one of the full-time engineers is asked to cover. Eskridge stated that the part-time operators are the last employees asked.

9. Eskridge stated that seniority is not a factor in creating the part-time employee schedules. Eskridge stated that management did and does schedule female employees during evening hours. Eskridge stated that from May to October 2003, there were 44 weekend night shifts, and 28 of those were covered by female employees. Eskridge stated that gender is not a factor in scheduling any shifts including night shifts.

10. Eskridge stated that there are no part-time employees that have placed limitations on their work availability, which affected their work hours including days off (not scheduled), or sick and vacation days. Eskridge stated that no other employee requested that his or her hours be restricted other than the Complainant. Eskridge stated that no other part-time employee worked restricted hours other than Complainant.

11. Eskridge stated that there are no records to show any employee who refused to work because a full-time employee called in sick, even if that employee could not be contacted to fill in.

12. Respondent's collective bargaining agreement, article three, section one, page 6, (Exhibit F) indicates that a normal work week

for all full-time employee shall consist of eight hours per day, not to exceed five days in any single week.

13. Respondent's collective bargaining agreement, article three, section two, page 7, (Exhibit G) indicates that Respondent shall post shift assignment schedules at least seven days in advance of the first workday of the week in which such schedules will be worked. In emergency circumstances, such as illness, revisions to posted shift assignments will be published as soon as practicable. Respondent shall make every effort to avoid excessive tours of duty by calling in a replacement employee where possible rather than extending the shift for employees who are already working.

14. Madeleine Monaco (female). Assistant Business Manager, IBEW Local 1220, stated that nothing in the collective bargaining agreement addresses part-time employee hours of work. Monaco indicated that there is no requirement that Respondent maintain a certain number of work hours for part-time employees. The number of hours that Respondent gives part-time employees is up to their discretion based on the needs of the department. However, there is a minimum schedule for part-time workers of at least more than 2 hours per shift.

15. Monaco stated that Complainant had church and family obligations that Respondent took into consideration when scheduling her work hours. Monaco stated that Complainant's requested time off included Saturdays, and some of the hours that Respondent requested her to work she turned down because of her obligations. Monaco stated that she did witness a statement made by Eskridge in March 2003, in a meeting regarding another female employee, where he stated that he was hesitant to schedule women to work at night for their own protection. Monaco indicated that he did not make the statement to the Complainant, and he was immediately told that the statement was inappropriate. Monaco stated that she was not aware of any other incidents that occurred.

C. Rebuttal

1. Complainant stated that she worked extra hours before May 2003. Complainant stated that other managers have reduced her hours, but her hours were never reduced fewer than 32 per week. Complainant stated that from May to June 2003, she worked about 20 hours per week, and as the month progressed, her hours decreased from 20 hours per week to 10 hours per week. Complainant stated that Eskridge used the male employees, Ed Mead and Albert Tate, to work longer hours than the female

Charge No. 2004CF0949
Page 6 of 16

employees. Complainant stated that Eskridge would give her and the other female part-time employee three-hour shifts, and her hours were being reduced each week in May 2003. Complainant stated that her hours were reduced from 20 to about 8 to 10 hours per week.

2.  Complainant stated that she had more seniority than the two male employees, Albert Tate and Ed Mead, who are both male master control operators.

3.  Complainant stated that during the mandatory meeting on May 8, 2003, Eskridge indicated that the reason for the reduction in hours in the department was due to budgetary reason. Complainant stated that the hours of the female employees were cut substantially lower than the male employees. Complainant indicated that hours for female employees were steadily being reduced while the male employees hours stayed the same. Complainant stated that only female employees worked three-hour shifts, males never worked only three-hour shifts.

4.  Complainant stated that Eskridge started Albert Tate (male), Master Control Operator, out with 15 hours per week when the hours were cut, but these hours immediately increased by Tate filling in for vacations as well as call-offs. Complainant stated that between May and September 2003, Eskridge refused to call her to fill shifts. Complainant stated that Eskridge gave the only two females reduced hours and Ed Mead's (male), Master Control Operator, hours increased to 20 per week. Complainants stated that Andrea Randall's hours were reduced to 15 hours per week. Complainant stated that her hours were reduced from 10 hours per week to 0 hours per week.

5.  Complainant stated that Eskridge told her that the reason for the reduction in hours was due to budgetary cuts, but, when he changed the schedule, he created 8 to 10 hour shifts with no lunches, which would be compensated, meaning that each employee would receive 3.5 extra hours at time and a half for the missed lunch. Complainant stated that this total at the end of the month meant that Mead would receive an extra 28 hours, which were more hours for the missed lunch. Complainant stated that Eskridge took the hours for the female employees and gave them to the male employees, and at the end of the month a total of 30 extra hours for all of the full-time male employees. Complainant indicated that Eskridge was paying out a total of 118 hours in overtime for the missed lunch, totaling $1541.08. Complainant explained that if Eskridge had kept the two female employees at 20

Charge No. 2004CF0949
Page 7 of 16

hours per week like Mead, each female would have received $1,776.16 per month. Complainant stated that Eskridge had the option of saving money by calling in a part-time employee to fill these hours, and since Mead and Tate were not available to work extra hours, full-time males were called for the hours instead of part-time females.

6. A WYCC master control operators schedule, effective the week of May 4, 2003, (Exhibit C), shows the part-time employees hours are as follows: Andrea Randall (female), was scheduled for a total of 15 hours; Complainant was scheduled for a total of 10 hours; Ed Mead (male), was scheduled for a total of 20 hours; and Albert Tate (male), was scheduled for a total of 15 hours.

7. Complainant stated that through her pastor, she requested Saturdays off only based on her spiritual needs.

D. Surrebuttal

1. Eskridge stated that he did not reduce female employees hours, part-time employees are called in on an as-needed basis.

E. Finding and Conclusion

A substantial evidence finding is recommended because:

1. Evidence indicates that Complainant hours were reduced on the third week of May 2003.

2. Evidence shows that Complainant was hired as a part-time employee.

3. According to Respondent, the practice has been for part-time employees to fill in on vacations and weekends, based on the employer's needs. There is no evidence of a policy regarding the hours part-time employees are mandated to work per week.

4. Documentation indicates that male employees were scheduled for more hours than female employees.

5. Evidence indicates that the similarly situated comparative Ed Mead was scheduled for more hours than Complainant.

VIII. Allegation B: Reduction of hours/sex, female

Charge No. 2004CF0949
Page 8 of 16

A.  Prima facie allegations

1.  Complainant's sex is female.

2.  Complainant performed her duties as a part-time master control operator in a satisfactory manner.

3.  In July 2003, Complainant's hours were reduced from 10 hours per week to 8 hours per week by Larry Eskridge (male), Chief Engineer. The reason given for the adverse action was due to budgetary constraints.

4.  A similarly situated male master control operator, Ed Mead, did not have his hours reduced as Complainant hours were reduced.

B.  Defenses

1.  Respondent's position is that Complainant hours were not reduced in July 2003.

2.  Paul Burmeister (male), General Counsel, indicated that the collective bargaining agreement allows for both full and part-time master control operators, and does not spell out the specifics for scheduling any part-time employee. Burmeister stated that there will be times where the master control will not be operated by a full-time employee, and where there is no coverage by a full-time employee, a part-time employee would need to fill in.

3.  Burmeister indicated that the Respondent's practice is that part-time employees are scheduled according to station need and per the schedule of availability of the employee. Obviously, part-timers who make themselves more available are going to be scheduled more often then those who do not make themselves available. Burmeister stated that the practice has been that part-time master control operators fill in at night, weekends and during vacations or illness of full-time employees. The scheduling of part-time employees is a management prerogative, and it appears to be essentially a matter where Respondent will fit the person in where they have stated they can work. Weekends are typically the most needed times for part-timers, and since Complainant needed Saturdays off for a religious commitment, it reflected in her hours worked.

4.  The WYCC-TV20 Part-time Master Control Operators hours worked in July 2003, as reported on City Colleges of Chicago signed certificates of attendance (Exhibit B1) shows that Ed Mead

worked 27 hours the first week; 20 hours the second week; 17.5 hours the third week; 20 hours the fourth and fifth week; for a total number of hours worked of 104.5 hours. Complainant worked in July 2003, 28 hours the first week; 18 hours the second and third week; 10 hours the fourth week; and 15 hours the fifth week for a total number of hours worked of 89 hours. Andrea Randall worked 15 hours the first week; 5 hours the second week; 25 hours the third week; 20 hours the fourth week; 10 hours the fifth week; for a total of 75 hours. Albert Tate worked 15 hours the first and second week; 22 hours the third week; 15 hours the fourth week; 29 hours the fifth week; for a total of hours worked of 98 hours.

5.    See Allegation A: Defenses 2 through 15.

C.    Rebuttal

1.    Complainant stated that in July 2003, Eskridge reduced her hours from 10 hours per week to 8 hours per week. Complainant stated that no reason was given for this action, and Ed Mead did not have his hours reduced. Complainant stated that the only employees affected by the reduction of hours were female employees.

2.    Complainant stated that she attended religious services on Saturdays, and requested that her pastor send a letter to Respondent so that she could have that day off every weekend. Complainant stated that Respondent did comply with her request.

3.    See Allegation A: Rebuttal 1 through 7.

D.    Surrebuttal

1.    Burmeister stated that Complainant's hours in July 2003 were not reduced to eight hours per week during the five-week period.

E.    Findings and conclusion

A substantial evidence finding is recommended because:

1.    Evidence shows that Complainant's hours were reduced from 10 hours to 8 hours per week.

2.    Evidence shows that Complainant was hired as a part-time employee.

3.    According to Respondent's practice, part-time employees fill in on vacations and weekends, based on the needs of the department.

Charge No. 2004CF0949
Page 10 of 16

> There is no evidence of a policy regarding the hours part-time
> employees are mandated to work per week.

4.   Evidence indicates that Ed Mead hours were increased in July
     2003, and Complainant hours were reduced in the month of July
     2003.

IX.   Allegation C:   Reduction of hours/sex, female

   A.   Prima facie allegations

      1.   Complainant's sex is female.

      2.   Complainant performed her duties as a part-time master control
           operator in a satisfactory manner.

      3.   In September 2003, Complainant's hours were reduced from 8
           hours per week to 4 hours per week by Larry Eskridge (male),
           Chief Engineer. No reason given for the adverse action.

      4.   A similarly situated male master control operator, Ed Mead, did
           not have his hours reduced as Complainant hours were reduced.

   B.   Defenses

      1.   Respondent's position is that Complainant hours were not reduced
           in September 2003.

      2.   The WYCC-TV20 Part-time Master Control Operators hours
           worked September 2003, as reported on City Colleges of Chicago
           signed certificates of attendance (Exhibit B2) shows that Ed Mead
           worked 25 hours on week 1; 19 hours on week 2; 20 hours on
           week 3; 28 hours on week 4; for a total 92 hours for the month.
           Complainant worked 4 hours on week 1; 8 hours on week two,
           4.44 (vacation) on week 3; and three hours on week four; for a
           total of 19.44 hours for the month. Andrea Randall (female),
           worked 18.5 hours on week 1; 7.5 hours for week 2; 3 hours for
           week 3; 8 hours for week 4; for a total of 37 hours for the month.
           Albert Tate worked 21 hours on week 1; 13 hours for week 2; 18
           hours for week 3; 17.5 hours for week 4; for a total of 69.5 hours
           for the month.

      3.   Eskridge stated that Complainant worked a total of 19.44 hours in
           September 2003, which shows in the variation of hours from
           month-to-month is based on the needs of the department. Eskridge
           stated that Complainant was on vacation the third week of

Charge No. 2004CF0949
Page 11 of 16

September 2003, accounting for a lower overall number of hours worked. Eskridge indicated that Complainant requested not to work on Saturdays due to a religious commitment, which was honored, but it reduced her availability in half.

4.  See Allegation A: Defenses 2 through 15.

5.  See Allegation B: Defenses 2 through 4.

C.  Rebuttal

1.  Complainant stated that her hours were reduced from 8 hours per week to 4 hours per week. Complainant stated that when other master control operators left, there were extra hours available, however Eskridge would not give her the extra hours. Complainant stated that she was not on vacation the third week of September 2003.

2.  Group Exhibit D shows that for the week of August 31, 2003, to September 6, 2003, Complainant was scheduled to work a total of 4 hours. Ed Mead was scheduled to work a total of 25 hours; Albert Tate was scheduled to work a total of 21 hours; Andrea Randall was scheduled to work a total of 18.5 hours.

3.  See Allegation A: Rebuttal 1 through 7.

4.  See Allegation B: Rebuttal 1 and 2.

D.  Surrebuttal

1.  Eskridge stated that Complainant's hours were reduced based on her request for Saturday as an off day, which caused her hours to be reduced.

E.  Finding and conclusion

A substantial evidence finding is recommended because:

1.  Evidence indicates that Complainant hours were reduced in September 2003.

2.  Evidence shows that Complainant was hired as a part-time employee.

3.  According to Respondent, the practice has been for part-time employees to fill in on vacations and weekends, based on the

employer's needs. There is no evidence of a policy regarding the hours part-time employees are mandated to work per week.

4.   Evidence indicates that male employees worked more total hours per week in September 2003, than the female employees.

5.   Evidence indicates that Complainant's comparative, Ed Mead, worked 92 hours for the month of September 2003, and she worked a total of 19.44 hours for the same time period.

X.   Allegation D: Reduction of hours/sex, female

A.   Prima facie allegations

1.   Complainant's sex is female.

2.   Complainant performed her duties as a part-time master control operator in a satisfactory manner.

3.   In October 2003, Complainant's hours were reduced from 4 hours per week to 0 hours per week by Larry Eskridge (male), Chief Engineer. No reason given for the adverse action.

4.   A similarly situated male master control operator, Ed Mead, did not have his hours reduced as Complainant hours were reduced.

B.   Defenses

1.   Respondent's position is that Complainant hours were reduced in October 2003, based on the needs of the department.

2.   Eskridge stated that Complainant did not show up for work on September 21, 2003. Eskridge indicated that Complainant had a very frequent pattern of absenteeism and tardiness, and when the schedule was posted, and she did not show up, she was left off the schedule for the first few weeks of October 2003. Eskridge stated that Complainant did not call for the first few weeks of October and explain her whereabouts. Eskridge stated that around the third week of October 2003 she did call in, and was then placed back on the schedule. Eskridge stated that because Complainant was unreliable, she was not placed on the schedule until the last few weeks in October 2003.

3.   Eskridge stated that the hours for the part-time master control operators in October 2003, are as follows: Complainant worked a total of three hours; Andrea Randall worked a total of 9 hours;

Charge No. 2004CF0949
Page 13 of 16

> Albert Tate worked a total of 76 hours; and Ed Mead worked a total of 70 hours.

4.  See Allegation A: Defenses 2 through 15.

5.  See Allegation B: Defenses 2 through 4.

6.  See Allegation C: Defenses 2 and 3.

C.  Rebuttal

1.  Complainant stated that Eskridge constantly scheduled her for three hours shifts. Complainant stated that in the month of October 2003, she was scheduled for a total of three hours. Complainant stated that Eskridge would schedule the male part-timers for more hours than the female part-timers.

2.  WYCC master control operations schedule for the week of October 5, 2003, through October 11, 2003 (Exhibit E) shows the full and part-time master control operator schedule. This exhibit shows that Mead worked a total of 20 weekly hours; Tate worked a total of 18 weekly hours; Randall worked a total of three evening hours, 10:00 p.m. to 1:00 am; and Complainant did not work the entire week.

3.  WYCC master control operations schedule for the week of October 12, 2003, through October 18, 2003 (Exhibit E1) shows the full and part-time operator schedule. This exhibit shows that Mead worked a total of 20 hours; Tate worked a total of 18 hours; Randall worked a total of three evening hours, 10:00 p.m. to 1:00 a.m.; and Complainant did not work the entire week.

4.  WYCC master control operations schedule for the week of October 19, 2003, through October 26, 2003 (Exhibit E2) shows the full and part-time operator schedule. This exhibit shows that Mead worked a total of 20 hours; Tate worked a total of 18 hours; Randall worked a total of three evening hours, 10:00 p.m. to 1:00 a.m.; and Complainant did not work the entire week.

5.  WYCC master control operations schedule for the week of October 26, 2003, through November 1, 2003 (Exhibit E3) shows the full and part-time operator schedule. This exhibit shows that Mead worked a total of 20 hours; Tate worked a total of 26 hours; Randall worked a total of three hours; and Complainant did not work the entire week.

Charge No. 2004CF0949
Page 14 of 16

6.    Complainant stated that Mead and Tate have never been scheduled for zero hours, and she was the only person scheduled to work zero hours in a six-week period without any explanation. Complainant stated that Respondent never had a problem contacting her to fill in for full-time employees because she has a home telephone, a cellular phone, and an email address.

D.    <u>Surrebuttal</u>

1.    Eskridge stated that Complainant was not scheduled hours to work because she was out of the office, and did not respond to phone calls or emails until the last week in October 2003.

E.    <u>Finding and conclusion</u>

A substantial evidence finding is recommended because there is insufficient evidence to indicate the defenses are untrue or pretextual, in that:

1.    Evidence indicates that Complainant was scheduled for zero hours in October 2003.

2.    Evidence shows that Complainant was hired as a part-time employee.

3.    According to Respondent, the practice has been for part-time employees to fill in on vacations and weekends, based on the employer's needs. There is no evidence of a policy regarding the hours part-time employees are mandated to work per week.

4.    Evidence indicates that male employees worked more total hours per week in October 2003, than the female employees.

5.    Evidence indicates that Complainant's comparative, Ed Mead, worked a total of 80 hours for the month of October 2003, and Complainant did not have any scheduled hours for the month of October 2003.

XI.    <u>Witness Information</u>

A.    Complainant (ffc)
233 Park Lane
Sauk Village, IL 60411
708-757-1890

B.    Maria Moore (female) (ffc)

Charge No. 2004CF0949
Page 16 of 16

E1.    WYCC Master control operations schedule, week of October 12, 2003 to October 18, 2003.

E2.    WYCC Master control operations schedule, week of October 19, 2003 to October 25, 2003.

E3.    WYCC Master control operations schedule, week of October 26, 2003 to November 1, 2003.

F.    Respondent's collective bargaining agreements, article three, section one, page six.

G.    Respondent's collective bargaining agreement, article three, section two, page seven.



**U.S. Department of Justice**

Civil Rights Division
NOTICE OF RIGHT TO SUE
WITHIN 90 DAYS

CERTIFIED MAIL
5056 0645

*950 Pennsylvania Avenue, N.W.*
*Karen Ferguson, EMP, PHB, Room 4239*
*Washington, DC 20530*

June 21, 2006

Ms. Wanda Vazquez
c/o Carol Coplan Babbitt, Esquire
Attorney at Law
542 S. Dearborn St., Ste. 1010
Chicago, IL 60605

Re: EEOC Charge Against Board of Trustees of Community College Dist. # 508
    No. 21B200400081

Dear Ms. Vazquez:

    Because you filed the above charge with the Equal Employment
Opportunity Commission, and more than 180 days have elapsed since
the date the Commission assumed jurisdiction over the charge, and no
suit based thereon has been filed by this Department, and because
you through your attorney have specifically requested this Notice,
you are hereby notified that you have the right to institute a civil
action under Title VII of the Civil Rights Act of 1964, as amended,
42 U.S.C. 2000e, et seq., against the above-named respondent.

    If you choose to commence a civil action, such suit must be
filed in the appropriate Court within 90 days of your receipt of
this Notice.

    This Notice should not be taken to mean that the Department of
Justice has made a judgment as to whether or not your case is
meritorious.

                            Sincerely,

                            Wan J. Kim
                    Assistant Attorney General
                        Civil Rights Division

            by      Karen L. Ferguson

                      Karen L. Ferguson
                Supervisory Civil Rights Analyst
                Employment Litigation Section

cc:  Chicago District Office, EEOC
     Board of Trustees of Community College Dist. # 508

Exhibit B



**U.S. Department of Justice**

Civil Rights Division
NOTICE OF RIGHT TO SUE
WITHIN 90 DAYS

CERTIFIED MAIL
5056 0645

*950 Pennsylvania Avenue, N.W.*
*Karen Ferguson, EMP, PHB, Room 4239*
*Washington, DC 20530*

June 21, 2006

Ms. Wanda Vazquez
c/o Carol Coplan Babbitt, Esquire
Attorney at Law
542 S. Dearborn St., Ste. 1010
Chicago, IL 60605

Re: EEOC Charge Against City Colleges of Chicago
       No. 21B200501161

Dear Ms. Vazquez:

    Because you filed the above charge with the Equal Employment
Opportunity Commission, and more than 180 days have elapsed since
the date the Commission assumed jurisdiction over the charge, and no
suit based thereon has been filed by this Department, and because
you through your attorney have specifically requested this Notice,
you are hereby notified that you have the right to institute a civil
action against the above-named respondent under:
       Title I of the Americans with Disabilities Act of 1990,
       42 U.S.C. 12111, et seq., and,
       Title V, Section 503 of the Act, 42 U.S.C. 12203.

    If you choose to commence a civil action, such suit must be
filed in the appropriate Court within 90 days of your receipt of
this Notice.

    This Notice should not be taken to mean that the Department of
Justice has made a judgment as to whether or not your case is
meritorious.

                          Sincerely,

                          Wan J. Kim
                    Assistant Attorney General
                      Civil Rights Division

          by

                      Karen L. Ferguson
                 Supervisory Civil Rights Analyst
                 Employment Litigation Section

cc: Chicago District Office, EEOC
       City Colleges of Chicago